**WILLIAM KANUPP,**

**Plaintiff,**

-vs-                                                               Case No.  **6:09-cv-1280-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## MEMORANDUM OF DECISION

William Kanupp (the "Claimant"), appeals to the District Court from a final decision of

the Commissioner of Social Security (the "Commissioner") denying his application for benefits.

Doc. No. 1.  This is Claimant's second appeal to the District Court arising out of Claimant's

January 9, 2002 application for benefits alleging an onset of disability as of April 1, 2001.  *See*

R. 59; *see also Kanupp v. Commissioner of Social Security*, Case No. 6:06-cv-1787-Orl-31KRS,

Doc. No. 1 (M.D. Fla.  Nov. 21, 2006) ("*Kanupp I*").[1]  In this case, Claimant argues that the final

decision of the Commissioner should be reversed because the Administrative Law Judge (the

"ALJ") failed to: consider the April 2008 opinion of Dr. Frank S. Alvarez, a neurologist, finding

Claimant totally disabled from any meaningful employment; articulate explicit and adequate

reasons for rejecting Claimant's testimony regarding the functional limitations resulting from his

right drop foot; and provide substantial evidence supporting the Claimant's residual functional

_____

[1]In *Kanupp I*, the District Court reversed and remanded the final decision of the Commissioner pursuant to sentence
four of 42 U.S.C. § 405(g) because the Administrative Law Judge "failed to articulate explicit and adequate reasons
for rejecting Kanupp's testimony about the functional limitations arising from his right drop foot."  *Kanupp v.
Commissioner of Social Security*, Case No. 6:06-cv-1787-Orl-31KRS, Doc. No. 16 at 13 (M.D. Fla. Dec. 31, 2007).

capacity (the "RFC") determination. Doc. No. 15. The Commissioner's decision is **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the ALJ erred by failing to provide the Court with enough information to show the ALJ properly considered Dr. Alvarez's April 2008 opinion.**

I.    **BACKGROUND.**

Claimant was born on November 14, 1973, and he obtained a high school diploma. R. 59, 325.[2] Claimant's past employment experience includes working as a warehouse manager, motor home detailer, farm laborer, and campus advisor/hall monitor. R. 82. Claimant has not worked since December 2000. R. 73. On January 9, 2002, Claimant filed an application for benefits alleging an onset of disability as of April 1, 2001. R. 59. Claimant alleges disability due to residual side effects from three lumbar surgeries, pain and radiculopathy of the right leg, right foot drop, degenerative disc disease of the lumbar spine, spinal stenosis, and arachnoiditis. R. 56.[3]

Claimant's application was denied initially and upon reconsideration. R. 45-46, 49-50. Thereafter, Claimant requested a hearing before an ALJ, and on March 3, 2004, a hearing was held before ALJ Albert D. Tutera. R. 203-13. Claimant, who was represented by counsel, was the only person to testify at the hearing. R. 203-13.

On June 15, 2004, ALJ Tutera issued a decision finding Claimant not disabled. R. 25-33. Claimant requested review before the Appeals Council and, on September 19, 2005, the Appeals

---

[2] Claimant was thirty-four (34) years old at the time of the hearing before the ALJ in this case. R. 323.
[3] "Arachnoiditis is a debilitating condition characterized by severe stinging and burning pain and neurologic problems. It is caused by an inflammation of the arachnoid lining – one of the 3 linings that surround the brain and spinal cord. This inflammation causes constant irritation, scarring, and binding of nerve roots and blood vessels. The predominant symptom of arachnoiditis is chronic and persistent pain in the lower back, lower limbs or, in severe cases, throughout the entire body. http://www.spineuniverse.com/displayarticle.php/atricle180.html." Doc. No. 15 at 6 n. 2.

Council denied Claimant's request for review thereby making ALJ Tutera's decision the final decision of the Commissioner. R. 5-8. Claimant sought review of the Commissioner's final decision in the District Court. On January 22, 2008, in *Kanupp I*, the District Court entered an order adopting the report and recommendation of the Honorable Magistrate Judge Karla R. Spaulding which recommended that the case be reversed and remanded to the Commissioner because the ALJ failed to articulate explicit and adequate reasons for rejecting the Claimant's subjective testimony about the functional limitations imposed by his right foot drop. *Kanupp I*, Doc. Nos. 16-18. The Court hereby adopts by reference the statement of facts set forth in Magistrate Judge Spaulding's report and recommendation, which is part of the record in this case (R. 241-45), because it thoroughly details the factual background and medical history through *Kanupp I*.

## II.  RELEVANT MEDICAL RECORD.

After the case was remanded to the Commissioner, the only additional medical and opinion evidence in the record are an April 11, 2008 evaluation and an April 29, 2008 medical source opinion from Dr. Alvarez. R. 301-13.

### A.  Dr. Alvarez's April 11, 2008 Evaluation.

Dr. Alvarez's examination notes state:

> . . . He is well developed, well nourished, cooperative, and pleasant . . . in no distress. There is a significant surgical scar in the lumbosacral areas in the midline. Straight leg raises are negative. There is tenderness over the top of the right foot where he had the fracture. . . . His anterior tibialis is atrophic to some degree. The right gastrocnemius is quite atrophic. Tone is decreased at the right ankle. Reflexes are 0 at the knees and ankles. The toes do not really move to plantar stimulation at all. The patient is unable to toe walk on the right nor can he heel walk on the right. Heel walking on the left is weak though he is able to toe walk on the

left.

His strength testing reveals hip flexion, quadriceps to be 5/5 bilaterally. Anterior tibialis is 0/5 on the right and 5/5 on the left. The peroneus longus is 4-/5 on the right and 5-/5 on the left. Posterior tibialis is 1/5 on the right and 5/5 on the left. Extensor hallus longus is 1/5 on the right and 4+/5 on the left. Hamstrings on the right and left are 5/5. Gastrocnemius 3+/5 on the right and 5/5 on the left. Toe plantar flexion is 2-/5 on the right and 5-/5 on the left. Toe dorsiflexion is 2-/5 on the right and 5-/6 on the left.

Sensory examination reveals pinprick to be decreased in the right foot medially and laterally to the ankle as well as the lateral calf below the knee. Temperature sense is decreased in similar fashion in the right leg. Vibratory sense is decreased in the right distal foot and position sense is decreased at the right great toe.

R. 302-03. Dr. Alvarez also performed an MRI scan of the lumbar spine which revealed:

[A]t T10-T11 a disk bulge indenting the thecal sac. At L2-L3 there is loss of disk height and hydration with herniated disk in combination with hypertrophy of facets and ligamentum flavum producing moderate to severe central and bilateral recess stenosis with bilateral neural foraminal stenosis. The herniated disk extends slightly inferiorly from the disk space level. There appears to be a prior incomplete laminectomy at L2-L3 level. The neural foramina are stenotic bilaterally, worse on the left at that level. The L3-L4 level demonstrates a loss of disk height and hydration with herniated nucleus pulposus with hypertrophy of facets and ligamentum flavum producing central and bilateral recess stenosis with bilateral neural foraminal stenosis. The herniated disk extends slightly superiorly from the disk space. Prior laminectomy is noted at that level. At L4-L5 there is loss of disk height and hydration with large left paracentral herniated nucleus pulposus effacing the ventral epidural fat producing left lateral recess stenosis. There is prior laminectomy at this level also noted. The neural foramina are stenotic bilaterally at this level.

R. 305. Dr. Alvarez also reviewed Claimant's entire medical history. R. 303-05.

Dr. Alvarez's assessment showed:

1. This patient is status post multiple lumbar surgeries;
2. The patient appears to have arachnoiditis of the cauda equina;

-4-

3. The patient's MRI scan reveals recurrent disk herniation at L2-L3, L3-L4 and L4-L5 associated with severe spinal stenosis and lateral recess as well as foraminal stenosis. These would likely all contribute to his progressive problems;

4. On examination, the patient has not only right lower leg weakness that he previously had at L5-S1 distribution as demonstrated by a previous EMG. He now also has left foot weakness in L5-S1 distribution though it is subtle and I do not even think the patient is aware of this. This was not previously present in 2003 when I examined him at the time of the prior visit;

5. The patient's status post recent right foot fracture due to instability of his gait which is a chronic ongoing problem and will likely persist perhaps leading to further injuries in the future and dictating that he should be very careful as far as his activity level for fear of these further injuries;

6. The patient has a long history of hypertension though on examination today, this was not well controlled; and

7. The patient has a history of diabetes which would certainly predispose increased problems making his nerves more susceptible to both injury and pain problems.

R. 305-06. Dr. Alvarez also made the following recommendations:

1. As mentioned above, the patient should be very careful as far as his activity level and any positions that he is put in as far as his activity or regarding walking on uneven ground, exposed heights, and stairs, all of which may predispose him to further falls and injuries in the future. As far as his chronic pain problems are concerned, his physician may want to try various medications such as Neurontin and Lyrica if they have not already been tried to control the pain he is having particularly in the right foot and leg with this burning that he has noticed. All of these medications start as a low dose and gradually increase. Cymbalta is another medication that might be tried for this burning pain that the patient so bitterly complains of at the present time. Again, this will start at a very small dose and gradually increase to up to either maximum effect or maximum dose or tolerance;

2. I will be glad to see the patient back in the future if I can be of further help;

3. It would seem very unlikely that this patient is able to work in any capacity given the inability to sit, stand, or walk very long and the severe pain problems he is having. I would consider the patient totally disabled at this point of any meaningful employment; and

4. Using the AMA Guides of Evaluation of Permanent Impairment Fifth Edition for the lumbar spine with surgeries and ongoing radiculopathy using the DRE model category V, page 384, the patient would have a 28% whole person impairment rating at the present time. For his right L5-S1 radiculopathy with severe weakness and sensory loss, I would assign him a 37% whole person impairment rating using the Table 17-37, page 552 Impairments Due to Nerve Deficits. For his left lower extremity weakness, I would assigned a 10% whole person impairment rating using the same graph for the L5-S1 radiculopathy with weakness. Thus, combining these at the present time, the patient would have a 60% whole person impairment rating. This was started by the 11/12/00 accident but <u>has progressively worsened through time</u> with surgeries and progressive degenerative problems the patient unfortunately has.

R. 306 (emphasis added). Thus, based on his examination and a review of the medical record, Dr. Alvarez opined that Claimant is totally disabled from any meaningful employment. R. 306.

**B. Dr. Alvarez's April 29, 2008 Medical Source Statement.**

On April 29, 2008, Dr. Alvarez offered a medical source statement regarding Claimant's functional limitations. R. 307-13. Dr. Alvarez opined that Claimant could sit, stand, and walk each for only fifteen minutes at a time and each for only two hours a day. R. 308. Thus, Dr. Alvarez stated that the Claimant could only sit, stand, and walk for a total of six hours in an eight hour workday, and Claimant must lay down the remaining two hours. R. 308. Dr. Alvarez attributed those limitations to Claimant's progressively worsening severe right leg weakness and pain. R. 308. Dr. Alvarez opined that those functional limitations were present as of April 2, 2001, and became progressively worse. R. 312.

**III.  <u>PROCEEDINGS BELOW</u>.**

On September 16, 2008, a supplemental hearing was held before ALJ Patrick F. McLaughlin. R. 314-60. Claimant, who again was represented by counsel, and vocational

expert (the "VE"), Paul Dolan were the only persons to testify at the hearing. R. 314-60. On November 4, 2008, ALJ McLaughlin issued a decision that Claimant was not disabled. R. 226-36. The ALJ made the following findings:

1. The Claimant met the insured status requirements of the Social Security Act through December 31, 2006;

2. The Claimant has not engaged in substantial gainful activity since April 1, 2001, the alleged onset date;

3. The Claimant has the following severe impairments: status post three lumbar surgeries, with residual pain and radiculopathy, down the right leg with right foot drop, degenerative disc disease of the lumbar spine, spinal stenosis, arachnoiditis, poorly controlled hypertension and diabetes;

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that the Claimant retains the residual functional capacity to perform a reduced range of light work, which, by definition, includes the capacity to perform sedentary work, as well: he can lift 20 pounds occasionally, 10 pounds or less frequently; he can stand/walk for 6 hours and sit for two hours, with the use of a leg brace and with a sit stand option that permits him to alternate positions every 15 minutes, during an 8 hour workday; he cannot climb or balance, but can occasionally stoop, kneel, crouch or crawl; he can occasionally perform push/pull functions with his left lower extremity, but not with his right lower extremity; he should avoid vibration, unprotected heights and hazards in the work place;

6. The Claimant is unable to perform any past relevant work;

7. The Claimant was born on November 14, 1973 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged onset date;

8. The Claimant has at least a high school education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills;

10. Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform; and

11. The Claimant has not been under a disability, as defined in the Social Security Act, from May 15, 1995 through the date of this decision.

*Id.* (emphasis added).

Regarding Dr. Alvarez medical records and medical source statement, the ALJ stated the following:

> In July 2003 that [sic] [C]laimant was evaluated by neurologist, Dr. Frank Alvarez Jr., M.D. The [C]laimant reported that he was not having much back pain and that the pain he did experience resolved with Aleve. He complained of continued numbness from his right leg to his foot. Examination confirmed markedly decreased sensation and perception of movement in his right leg and foot. Dr. Alvarez stated that the [C]laimant's condition was consistent with Dr. Harr's findings. He opined that the [C]laimant was limited to standing for no more than 10 minutes without a leg brace; that he could only walk with the use of an assistive device; that he could sit for no more than 2 hours without changing position.
>
> [Claimant] was sent by his attorney for evaluation by Dr. Alvarez on April 11, 2008. Dr. Alvarez was not a treating physician. He had seen the [C]laimant on one previous occasion nearly five years earlier. Although the [C]laimant had not seen a doctor in 5 years, he complained [of] intermittent sharp, burning low back pain that he rated as being a 7-8 on a scale of 1 to 10, with 10 being the most severe. He stated that he continued to have numbness and tingling of the right leg, from the knee to the calf and into the foot. He stated that this pain was aggravated by lying down, walking short distances or sitting too long. He could only tolerate being in one position for about 15 minutes at a time. Walking generated a burning pain that gradually spread up to his right knee. During the previous two years he had noticed pain in the tailbone area associated with sitting too long, as well as difficulty balancing. He denied any loss of bladder [or] bowel control. The [C]laimant stated that he had previously been taking Doxycycline, Lexapro, Metaformin and Lisinopril, but said he had been out of medications for four or five months due to a lack of funds. He did not explain how he had had previously obtained prescription medications in view of the fact that he had not seen a doctor in five years. The [C]laimant also complained of sleeping difficulty,

cramping in his leg and depression since 2006. He did not provide evidence of mental health evaluation, diagnosis, or treatment in support of his allegation of depression. On examination, Dr. Alvarez noted that the [C]laimant was significant for diabetes of 2 years duration. His blood pressure was 145/110. There was atrophy in the right gastrocnemius, decreased tone in the right ankle, -0- reflexes in the knees and ankles and his toes did not "really" move to plantar stimulation. He was unable to heel-to-toe walk on the right and was weak with the same test on the left. Lower extremity strength testing was weak and sensory testing was decreased in the right foot. The report of examination contains a history of the [C]laimant's diagnostic testing following which Dr. Alvarez stated his diagnostic impression as including, (1) status post multiple lumbar surgeries; (2) arachnoiditis; (3) a 4/11/08 MRI revealed recurrent disc herniation at L2 through L5, with severe spinal stenosis and lateral recess, as well as foraminal stenosis, (4) right lower leg weakness as previously diagnosed and left foot weakness not present in previous exam; (5) recent right foot fracture; (6) history of hypertension, not well controlled; and (7) history of diabetes, which aggravated his nerves and rendered him more susceptible to pain problems. Dr. Alvarez recommended that the [C]laimant should try Neurontin and Lyrica for pain control and Cymbalta for burning pain. The doctor concluded that the [C]laimant had a combined whole person impairment rating of 60% based on L5-S1 radiculopathy with weakness and nerve deficits.

Dr. Alvarez also provided [a] Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that: he can occasionally lift/carry up to 20 pounds; he can sit, stand or walk for up to 15 minutes each, with the use of a cane, and for up to [sic] 2 hours each for a total of 6 hours in an 8-hour day; he may lie down for up to 2 hours per day; he can occasionally operate foot controls with his lower left extremity, but not with his lower right extremity, he can occasionally climb stairs or ramps, but not ladders or scaffolds; he cannot balance, but can occasionally stoop, kneel, crouch, or crawl; he should avoid unprotected heights and moving mechanical parts, but can occasionally operate a motor vehicle; he is not otherwise limited. In addition, the doctor opined that the [C]laimant can do a little shopping, travel without a companion, walk without a wheel chair or dual assistive devices or a walker, use standard public transportation, prepare simple meals and feed himself, care for his personal hygiene needs, and he can sort, handle and us paper/files.

R. 230-31 (emphasis added).

In conjunction with the ALJ's credibility determination of the Claimant, the ALJ states that the "reports and opinions of Drs. Lavoie . . . and Alvarez" were given "greater weight" than "the reports of other treating, examining and non-examining medical sources. . . ." R. 233 (emphasis added). The ALJ further states:

> In his first examination during 2003, Dr. Alvarez stated he found the [C]laimant's condition was consistent with Dr. Harr's findings. The doctor also noted that the [C]laimant was obtaining complete pain relief with Aleve. Five years later, Dr. Alvarez reported finding weakness in the [C]laimant's left foot that he had not seen in 2003, but otherwise his examination failed to reveal that [sic] any condition that had not been previously noted in the medical record. In response to the [C]laimant's complaints of severe pain, Dr. Alvarez recommended that he try Neurontin and Lyrica for pain control and Cymbalta for burning pain. The doctor concluded that the [C]laimant had a combined whole person impairment rating of 60% based on L5-S1 radiculopathy with weakness and nerve deficits, which he said he arrived at by combining two previous impairment ratings by Dr. Lavoie and Dr. Harr. He assigned a 10% whole body impairment.
>
> Thus, the record demonstrates that at the time of Dr. Alvarez's 2003 examination the [C]laimant had a slap foot that was mostly corrected with the use of an orthodic and the affect of his right leg impairment was substantially reduced when he chose to wear his brace. In addition, the medical evidence clearly demonstrated that what little pain the [C]laimant had was resolved with Aleve. In his 2008, examination, Dr. Alvarez did not find that the [C]laimant's right leg and foot problems were any more severe than the evidence had previously demonstrated. The doctor did opine that the [C]laimant's left foot weakness had not been seen in his 2003 examination. Finally, he noted there was a history of diabetes since 2006, poorly controlled hypertension and depression. No evidence of depression has been provided for examination and it is believed that Dr. Alvarez merely conveyed the [C]laimant's self-report. Add to all of this the fact that there is a five-year gap in the medical record between 2003 and 2008 during which there is no record evidence treatment of any kind. Further, the [C]laimant told

Dr. Alvarez in 2008 that he had been out of medication for some months, but failed to explain how he was obtaining that medication in the absence of medical treatment. Considering also that the evidence reflects that historically there was little pain associated with the [C]laimant's right foot slap prior to 2008, it is difficult to find the [C]laimant's report of pain at the level of 7-8 out of 10. Although the [C]laimant testified that he could not afford medication, given his reported pain level it is difficult to believe that he did not seek treatment through an agency that serves the poor or that he did not seek samples from a previous treating physician. The bottom line is that on consideration of the objective evidence, the [C]laimant's allegation of disability is not credible.

R. 234 (emphasis added). Nowhere in the ALJ's decision does he address Dr. Alvarez's ultimate opinion that Claimant's right foot drop and degenerative disk disease were progressively worsening and rendered Claimant totally disabled from any meaningful employment. R. 226-36. Thus, while the ALJ states that he has given "greater weight" to the "reports and opinions" of Dr. Alvarez, and others, the ALJ fails to mention Dr. Alvarez's ultimate opinion that the Claimant is totally disabled.

After the ALJ's decision, Claimant requested review before the Appeals Council and, on July 9, 2009, the Appeals Council denied Claimant's request for review making the ALJ Murray's decision the final decision of the Commissioner. R. 214. The Appeals Council stated that it "carefully considered your comments with respect to the opinion of Dr. Alvarez and has determined that there is no essential difference between the assessment of Dr. Alvarez and that of the Administrative Law Judge." R. 214 (emphasis added). Thereafter, Claimant sought review of the Commissioner's final decision in the District Court. Doc. No. 1.

## VI.  THE PARTIES' POSITIONS.

The Claimant assigns three errors to the Commissioner's final decision. Doc. No. 15. First, Claimant argues that the ALJ failed to consider the opinion and assessment of Dr. Alvarez.

Doc. No. 15 at 14-15 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Second, Claimant maintains that the ALJ failed to articulate explicit and adequate reasons for finding his subjective testimony not entirely credible. Doc. No. 15 at 12-14. Finally, Claimant argues that the ALJ's RFC determination is not supported by substantial evidence. Doc. No. 15 at 16-18. Claimant requests reversal and a remand for an award of benefits. Doc. No. 15 at 19. Alternatively, Claimant requests reversal and a remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). *Id.*

The Commissioner maintains that the ALJ properly considered Dr. Alvarez's report and opinion and gave them great weight. Doc. No. 18 at 9-11. Second, the Commissioner argues that the ALJ gave explicit and adequate reasons for finding Claimant's subjective testimony. Doc. No. 18 at 4-9. Finally, the Commissioner asserts that substantial evidence support the ALJ's RFC determination. Doc. No. 18 at 11-16. Thus, the Commissioner requests that the final decision be affirmed. Doc. No. 18 at 16.

## V.  LEGAL STANDARDS.

### A.  THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is

defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear

to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first

determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work

considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B. THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis*

*v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

## VI.    ANALYSIS.

### Dr. Alvarez's Report and Opinion.

Claimant argues that the ALJ erred by failing to properly consider the April 2008 report and opinion of Dr. Alvarez. Doc. No. 15 at 14-15. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

*Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to different medical opinions <u>and the reasons therefor</u>, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[5]

In this case, Dr. Alvarez, a two-time examining physician, opined that Claimant is "totally disabled at this point from any meaningful employment." R. 306.  Moreover, Dr. Alvarez further opined that Claimant could only sit, stand, and/or walk for a total of six hours in an eight hour workday and his functional limitations would require that he lay down for the remaining two hours.  R. 308.  Dr. Alvarez attributed his opinion to Claimant's progressively worsening severe right leg weakness and pain.  R. 308.

In his decision, although the ALJ reviewed Dr. Alvarez's report and medical source statement, including the finding that Claimant could only sit, stand, and/or walk for a total of six hours in an eight hour workday, the ALJ never addresses Dr. Alvarez's ultimate opinion that Claimant is totally disabled.  R. 226-36.[6]  Nevertheless, the ALJ specifically afforded great weight to Dr. Alvarez's report and opinion.  R. 223.  Thereafter, the ALJ determined, incongruently from Dr. Alvarez's report and opinion, that the Claimant has the RFC to stand and/or walk for six hours and sit for two hours, with a sit/stand option every fifteen minutes, for an eight hour workday.  R. 231.  Thus, the ALJ concludes that the Claimant is not disabled without providing any reasons for rejecting the report and opinion of Dr. Alvarez.  To the

_____

[5] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

[6] The ALJ's statement that "[i]n his 2008, examination, Dr. Alvarez did not find that the [C]laimant's right leg and foot problems were any more severe than the evidence had previously demonstrated," is somewhat misleading since Dr. Alvarez specifically found that Claimant's right leg condition is chronic and renders his totally disabled.  R. 234, 306.  Moreover, in the April 29, 2008 medical source statement, Dr. Alvarez stated that Claimant's right leg condition was progressively worsening.  R. 308.

contrary, as set forth above, the ALJ stated he gave "greater weight" to Dr. Alvarez's opinion.

The ALJ's decision is internally inconsistent. If the ALJ meant to afford "greater weight" to only a portion of Dr. Alvarez's opinion and reject Dr. Alvarez's ultimate conclusion, the ALJ's decision fails to explicitly or implicitly indicate that was the case or to provide any basis for that decision. As set forth above, without stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985). While the ALJ specifically stated that he gave greater weight to the report and opinion of Dr. Alvarez, the ALJ fails to provide reasons why the ALJ rejected Dr. Alvarez's opinion about the limiting effects of Claimant's medical condition and his prognosis. This error warrants reversal.[7] While Claimant requests a remand for an award of benefits, the Court cannot find on the current record that the cumulative effect of the evidence establishes disability without any doubt. *Davis*, 985 F.2d at 534.

**VII.   CONCLUSION.**

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **REVERSED and REMAND pursuant to sentence four of Section 405(g) to the ALJ for a rehearing consistent with this opinion**.[8] The Clerk is directed to enter judgment in favor of the Claimant and close the case.

---

[7] Dr. Alvarez specifically opined that Claimant could only sit, stand and walk for a total of six hours in an eight hour workday. R. 230-31. Notably, Social Security Ruling 96-8p provides that, as it relates to an individual's RFC, the ability to perform work on a regular and continuing basis "means 8 hours a day, for 5 day s a week, or an equivalent work schedule." *Id.* If the ALJ actually meant to provide "greater weight" to the report and opinion of Dr. Alvarez, then Claimant's inability to perform more than six hours of work in an eight hour workday would necessarily render him disabled. On remand, if the ALJ decides to give less weight to or reject the report and opinion of Dr. Alvarez, the ALJ should explicitly provide reasons that are supported by substantial evidence for determining that Claimant can sit, stand and/or walk for a total of eight hours in an eight hour workday.

**DONE** and **ORDERED** in Orlando, Florida on May 24, 2010.

Greg Kelly

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Edward S. Rue, Esq.
Rue & Ziffra, P.A.
632 Dunlawton Avenue
Port Orange, FL 32127

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Patrick F. McLaughlin
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing

---

[8] Since the case must be reversed and remanded because the ALJ failed to properly consider Dr. Alvarez's report and opinion, it is unnecessary to address the other issues raised by the Claimant.

Jacksonville, Florida   32256-1224